# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR R-G PREMIER BANK OF PUERTO RICO, **Plaintiff**, v. FRANCISCO ALMEIDA-LEÓN, *et al.*, **Defendants.** | **Civil No.** 18-1960 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is the Federal Deposit Insurance Corporation ("FDIC")'s motion for a preliminary injunction. (Docket No. 12.) For the reasons set forth below, the Court **DENIES** the FDIC's motion.

## I. Background

Defendants Juan Almeida-León, Francisco Almeida-León, Wanda Cruz-Quiles, their conjugal partnership, and Tenerife Real Estate Holdings LLC (collectively, "the Almeidas") are litigants in two civil actions: (1) FDIC v. Almedia-León *et al.*, Civil No. 18-1960 (FAB) (District of Puerto Rico action), and (2) Tenerife Real Estate Holdings, LLC *et al*. v. United States, Civil No. 16-685

("Court of Federal Claims action").  The actions arise from the same factual allegations.

On April 11, 2017, R-G Premier Bank loaned the Almeidas $2,100,000.00.  (Docket No. 1 at p. 4.)  The Office of the Commissioner of Financial Institutions in Puerto Rico closed R-G Premier Bank on April 30, 2010, naming the FDIC as receiver.  Id.  The Almeidas defaulted on the loan.  Id. at p. 6.  The FDIC as receiver (FDIC-R) filed a complaint against the Almeidas for the collection of monies and mortgage foreclosure.  FDIC v Almedia-León, et al., Civil No. 12-2025 (FAB), Docket No. 1.  The Court entered judgment in favor of the FDIC-R on September 26, 2013.  (Docket No. 25.)

According to the FDIC, the Almeidas attempted to "fraudulently transfer away valuable assets that [were] otherwise subject to execution by the FDIC-R through the enforcement of the Judgment entered by this Court." (12-2025, Docket No. 27 at p. 4.)  The FDIC-R moved for a temporary restraining order ("TRO"), requesting that the Court stay "the public bid process of the [mortgaged properties] in order to ensure that the proceeds of said sale which correspond to Juan [Almeida] – and which would therefore be attachable by the FDIC – are properly preserved."  Id. at p. 11.  This Court granted the FDIC-R's motion for a TRO, restraining the Almeidas from "conducting, otherwise causing the

occurrence of, the auction scheduled to be held on May 29, 2014 at 9:30 a.m. at the Puerto Rico Court of First Instance, San Juan Superior Division." (12-2025, Docket No. 29.) The Court converted the TRO to a preliminary injunction with the consent of the parties. (12-2025, Docket No. 54.) Ultimately, the FDIC and the Almeidas reached a settlement agreement on July 28, 2014. (12-2025, Docket No. 68.) Consequently, the Court granted the FDIC-R's motion to set aside the preliminary injunction. (12-2025, Docket Nos. 68 and 69.)

### A. The FDIC/Almeida Settlement Agreement

The Almeidas agreed to pay the FDIC-R with proceeds from the foreclosure of three properties located on Kennedy Avenue in San Juan, Puerto Rico, referred to as the "Kennedy Property." (12-2025, Docket No. 65, Ex. 1.) The settlement agreement contains a mandatory forum selection clause, providing that:

> [The FDIC-R and the Almeidas] agree that jurisdiction and venue in any action to enforce any provision of this Agreement, or for breach of this Agreement shall be the [United States District Court for the District of Puerto Rico] which shall retain jurisdiction for enforcement purposes. Notwithstanding the foregoing, the Foreclosure Action and Foreclosure Auction will remain in and under the jurisdiction of State Court.

Id. at p. 12.[1]  Also, the settlement agreement provided that the FDIC "is currently obtaining a Phase 1 Environmental Site Assessment report on and assessing the environmental condition of the Kennedy Property."  Id. at p. 9.  The FDIC pledged to complete the Environmental Site Assessment "as quickly as possible."  Id.  The parties stipulated that the "Foreclosure Auction [would] not occur" until the FDIC completed the Environmental Site Assessment.

---

[1] Courts have recognized two forms of forum selection clauses:  permissive and mandatory.  Permissive forum selection clauses are "often described as 'consent to jurisdiction' clauses, [and] authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere."  Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009) (distinguishing permissive and mandatory forum selection clauses) (citing 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3803.1 (3d ed. 1998)).  In contrast, mandatory forum selection clauses "contain clear language indicating that jurisdiction and venue are appropriately and exclusively in the designated forum."  Id.  Preclusive language such as "shall" and "must" suggests that the clause is mandatory.  See Claudio-de León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 (1st Cir. 2014) (interpreting contractual language stating that litigation "shall be submitted to the jurisdiction and competence of the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Part" constituted a mandatory forum selection clause).  The forum selection clause in the FDIC-R/Almeida settlement agreement incorporates preclusive language, including "shall" and "any action to enforce any provision."  (Docket No. 65, Ex. 1 at p. 12.)  Accordingly, the forum selection clause is mandatory.

Id.[2]

### B.    The Court of Federal Claims Action

The foreclosure of the Kennedy Property has not occurred. On May 23, 2017, the Almeidas commenced an action in the United States Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491. See Tenerife Real Estate Holdings, LLC, *et*

---

[2] The FDIC-R sold all of its rights, titles, and interests related to the Almeida's loan to WM Capital in 2015. (Civil No. 12-2025, Docket No. 78 at p. 5.) WM Capital requested that the Court substitute it "into the place of the FDIC-R as the . . . real party in interest" pursuant to Federal Rule of Civil Procedure 25. (Civil No. 12-2025, Docket No. 73 at p. 1.) The Court granted WM Capital's motion for substitution. (Civil No. 12-2025, Docket No. 74.)

The Almeidas sued WM Capital for breach of contract and litigious credit in the Puerto Rico Court of First Instance, San Juan Division. Almeida-León, *et al*. v. WM capital, *et al*., Civil No. KAC2016-0027; see 31 P.R. Laws Ann. tit. 31, §§ 3052, 3950. WM Capital filed a notice of removal on March 7, 2016 in this Court. Almeida-León et al. v. CM Capital Mgmt., Inc., Civil 16-1394 (DRD). Subsequently, WM Capital filed a counterclaim against the Almeidas for breach of contract. Id., Docket No. 25 at pp. 12—13.

The Court granted WM Capital's motions for dismissal and summary judgement regarding the litigious credit and breach of contract causes of action, respectively. Almeida-León v. WM capital Mgmt., 236 F. Supp. 3d. 524 (D.P.R. 2019) (Casellas, J.); Almeida-León v. WM Capital Mgmt., Civil 16-1394, 2018 U.S. Dist. LEXIS 45584 (D.P.R. Mar. 19, 2018) (Domínguez, J.). Because "WM Capital still has a live counterclaim for breach of contract," however, the Court refrained from issuing a partial judgment. WM Capital Mgmt., 2018 U.S. Dist. LEXIS 45584 *9—10. Oral argument regarding WM Capital's motion for summary judgment as to its counterclaim against the Almeidas is set for February 21, 2019. (Civil No. 16-1394; Docket No. 223.)

*al.* v. United States, Civil No. 17-685.³  The Almeidas sued the United States, asserting that the "FDIC is an agency of the United States as defined by 28 U.S.C. § 451; is part of the United States of America, with powers to sue and to be sued." Id. at p. 14.

The Almeidas premised the Court of Federal Claims action on their settlement agreement with the FDIC-R.  See Civil No. 12-2025. They alleged that the FDIC "never disclosed the fact that, before the [settlement agreement] was signed, it had in fact obtained the environmental study which demonstrated that the mortgaged realty posed no environmental risk to health or safety." (Docket No. 14 at p. 4.)  The amended complaint sets forth a breach of contract claim pursuant to Puerto Rico law, and a Takings Claim pursuant to the Fifth Amendment of the United States Constitution.

---

³ The Tucker Act provides that:

> The United States Court of Federal Claims shall have jurisdiction to render a judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort.

28 U.S.C. § 1491.  The Court of Federal Claims has exclusive jurisdiction regarding "Big Tucker" claims for more than $10,000.  Id.; see Charles v. Rice, 28 F.3d 1312, 1321 (1st Cir. 1994).  District courts and the Court of Federal Claims share concurrent jurisdiction for "Little Tucker" claims of less than $10,000.  28 U.S.C. § 1346(a)(2); Sibley v. Ball, 924 F.2d 28—29 (1st Cir. 1991).

Id. at p. 17.[4]  The Almeidas seek $20 million in damages for each plaintiff.  Id. at p. 20.

### 1. The Court of Federal Claims Dismissed the Almeidas' Amended Complaint

The United States moved to dismiss the Almeidas' amended Court of Federal Claims complaint pursuant to Rule 12(b)(1).  (Docket No. 15.)  The Court of Federal Claims' jurisdiction is "limited to actual, presently due money damages from the United States."  Bowen v. Massachusetts, 487 U.S. 879, 914 (1988) (internal citation and quotation omitted).  The United States asserted that the Court of Federal Claims lacked jurisdiction, because "claims relating to the FDIC's actions are not claims against the United States."  (Docket No. 15 at p. 1.)[5]

---

[4] The Tucker Act "does not create any substantive right enforceable against the United States for money damages."  United States v. Mitchell, 463 U.S. 206, 216 (1983).  The statute is "simply a jurisdictional provision that operates to waive sovereign immunity for claims presented on other sources of law."  Paret-Ruiz v. United States, 827 F.3d 167, 176 (1st Cir. 2016) (quoting United States v. Bromes, 568 U.S. 6, 10 (2012)).

[5] The United States also argued to the Almeidas' claims are subject to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), not the Tucker Act.  Docket No. 15 at p 6; citing 12 U.S.C. §1821 et seq; see United States v. Bormes, 568 U.S. 6, 13 (2012) ("Statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act.").  FIRREA governs "any claim relating to any act or omission of . . . the [FDIC] as receiver."  12 U.S.C. § 1821(d)(13)(D)(ii).  Pursuant to FIRREA, claimants may seek redress in "the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia."  12 U.S.C. § 1821(d)(6)(A)(ii).  Consequently, the United States argued that the Court of Federal Claims lacked jurisdiction to adjudicate FIRREA actions against the FDIC in its capacity as a receiver.

On January 23, 2018, the Court of Federal Claims granted the United States' motion to dismiss, holding that the "FDIC is not the United States when it acts as a receiver for a failed bank." Tenerife Real Estate Holdings, LLC v. United States, 126 Fed. Cl. 156, 160 (2018); citing O'Melveny & Meyers v. FDIC, 512 U.S. 79, 85 (1994) ("But the FDIC is not the United States, and even if it were we would be begging the question to assume that it was asserting its own rights rather than, as receiver, the rights of [the failed bank].").[6] Accordingly, the United States prevailed because the Court of Federal Claims lacked subject matter jurisdiction. Id.

### 2. The Almeidas' Appeal is Pending Before the United States Court of Appeals for the Federal Circuit

The Almeidas filed a notice of appeal and an opening brief in the United States Court of Appeals for the Federal Circuit on April 26, 2018 and August 8, 2018, respectively. (No. 18-1907, Docket Nos. 1 and 15.) The United States filed its responsive brief on December 7, 2018. (Docket No. 20.) A week later, the FDIC filed an *amicus* brief. (Docket No. 22.) On February 4, 2019, the Almeidas filed a reply brief. (Docket No. 28.)

---

[6] Because the Almeidas failed to comply with the administrative requirements set forth in FIRREA, the Court of Federal Claims held that "transferring [the] case to the proper district court is inappropriate at this time." Tenerife Real Estate Holdings, 126 Fed. Cl. at 162 (noting that the Almeidas filed suit "nearly six months after the notice of disallowance," a violation of FIRREA's 60-day requirement to do so).

The Almeidas argue that the FDIC is the United States because the "FDIC did not act as a receiver in the ordinary course of business." (Docket No. 13, Ex. 1 at p. 25.) The United States maintains that the FDIC as receiver "does not act on behalf of the United States for purposes of Government liability under the Tucker Act." Docket No. 20 at pp. 21 and 34; citing Atherton v. FDIC, 519 U.S. 213, 225 (1997) ("[H]ere, as in O'Melveny, the FDIC is acting only as a receiver of a failed institution; it is not pursuing the interests of the Federal Government as a bank insurer."). The FDIC argued in its *amicus* brief, however, that "the FDIC as receiver counts as the United States for Tucker Act Purposes." Docket No. 22 at p. 11; citing Auction Co. of Am. v. FDIC, 132 F.3d 746, 750 (D.C. Cir. 1997) ("As the FDIC as Receiver counts as the United States for the Tucker Act, it does so for the Tucker Act (and general federal) statute of limitations.").[7] The FDIC suggested that the Court of Appeals for the Federal Circuit "may wish to *sua sponte* stay its proceedings or at least defer issuing a decision until the Puerto Rico district court decides the applicability of the forum selection clause." (Docket No. 22 at p. 10.) The Court of Appeals for the Federal Circuit has not issued a decision. Oral arguments will occur between April and

---

[7] The FDIC argued that the Court of Appeals for the Federal Circuit "should affirm the Court of Federal Claims' holding that FIRREA deprived it of jurisdiction over this case." (Docket No. 22 at p. 30.)

September.  See Docket No. 33; Fed. R. App. P. 34(a) ("Oral argument must be allowed in every case unless a panel of three judges . . . agrees that oral argument is unnecessary.").

### C. The District of Puerto Rico Action

The FDIC commenced this action on February 13, 2018, just one day before the FDIC filed its *amicus* brief in the Court of Federal Claims action. (Civil No. 18-1960, Docket No. 1; Civil No. 18-1907, Docket No. 22.) The FDIC seeks a declaratory judgment holding that the forum selection clause in the FDIC/Almeida settlement agreement is mandatory, and that the Court enjoin the Almeidas from litigating in any jurisdiction other than in this Court. (Docket No. 1 at p. 2.) Ultimately, the FDIC requests that the Court order the Almeidas to dismiss their complaint in the Court of Federal Claims and their corresponding appeal before the Court of Appeals for the Federal Circuit. Id.

On January 4, 2019, the FDIC moved for a preliminary injunction, because the Almeidas "flouted [the] forum selection clause by filing litigation elsewhere." (Docket No. 12 at p 9.) The Almeidas responded, and the FDIC replied. (Docket Nos. 27 and 35.) The Court heard argument at a preliminary injunction hearing on February 13, 2019. (Docket No. 37.) The FDIC's arguments in support of the preliminary injunction motion are unconvincing.

**II. Preliminary Injunction Standard**

The purpose of injunctive relief is to prevent future acts or omissions of the non-movant that violate the law or constitute harmful conduct. United States v. Oregon Med. Soc., 343 U.S. 326, 333 (1952). A preliminary injunction "is traditionally viewed as relief of an extraordinary nature and does not purport to be a disposition of the matter on its merits." Sánchez v. Esso Std. Oil Co., 572 F.3d 1, 14 (1st Cir. 2009) (internal citation omitted). The FDIC's motion for a preliminary injunction is "a matter for the discretion of the district court and is reversible, of course, only for an abuse of discretion." Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981).

The Court must consider the following four factors in determining whether to grant the FDIC's motion: (1) the likelihood that the FDIC will succeed on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of the relevant equities (*i.e.*, the hardship that will befall the Almeidas if the injunction issues contrasted with the hardship that will befall the FDIC if the injunction does not issue); and (4) the effect of the Court's ruling on the public interest. Id.

Irreparable harm "constitutes a necessary threshold showing for an award of preliminary injunctive relief." González-Droz v. González-Colón, 573 F.3d 75, 79 (1st Cir. 2009). "Delay between

the institution of an action and the filing of a motion for a preliminary injunction, not attributable to intervening events, detracts from the movant's claim of irreparable harm." Charlesbank Equity Fund II, Ltd. v. Blinds To Go, Inc., 370 F.3d 151, 163 (1st Cir. 2004) (citation omitted); see Zavala-Santiago v. González-Rivera, 553 F.2d 710, 712-13 (1st Cir. 1977) ("When a claim for injunctive relief deserves and is granted priority treatment, a reasonable inference from the delay of the moving party is that he has little interest in vindicating whatever rights he may have."). If the FDIC "has already been subjected to the putative harm caused by the defendants' conduct for a significant period of time, [the FDIC] cannot credibly argue that pressing hardship requires injunctive relief in the interim before the underlying matter is resolved." HCC Specialty Underwriters, Inc. v. Woodbury, 289 F. Supp. 3d 303, 323 (D.N.H. 2018) (internal citation and quotation omitted) (holding that a 10-month delay in seeking injunctive relief undercuts the movant's irreparable harm argument).[8]

---

[8] See Asymmetrx Med., Inc. v. McKeon, 932 F. Supp. 2d 232, 237 (D. Mass. 2013) ("[Movant's] unexplained delay in seeking injunctive relief belies her claims for irreparable harm."); Jordache Enterprises, Inc. v. Levi Strauss & Co., 841 F. Supp. 506, 521 (S.D.N.Y. 1993) (delay in moving for a preliminary injunction "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.") (internal quotation omitted); Snyder v. Am. Kennel Club, 575 F. Supp. 2d 1236, 1242-43 (D. Kan. 2008) (holding that the movant failed to establish irreparable harm after a ten-month delay); Costello v. McEnery, 767 F. Supp. 72, 78 (S.D.N.Y. 1991) (holing that a one-year delay "bolsters the Court's conclusion that there has been an insufficient showing of irreparable harm to justify issuance of a preliminary injunction").

**III. The FDIC Failed to Demonstrate Irreparable Harm**

While the United States opposed the FDIC's Tucker Act causes of action in the Court of Federal Claims and prevailed on its motion to dismiss, the FDIC did nothing. The Court of Federal Claims action commenced on **May 23, 2017**. (Civil No. 17-685, Docket No. 1.) The FDIC moved for injunctive relief, however, on **December 13, 2018** in its complaint, and again on January 4, 2019 in its motion for a preliminary injunction. (Docket Nos. 1 and 12.) Accordingly, the FDIC did not move for injunctive relief until **eighteen months** after the Almeidas sued the United States in the Court of Federal Claims. Indeed, the FDIC never appeared before the Court of Federal Claims. The FDIC filed a notice of appearance in the Court of Appeals for the Federal Circuit on December 13, 2018, the same day it filed the complaint in this action. (Civil No. 17-683, Docket No. 21; Civil No. 18-1960, Docket No. 1.) Moreover, the *amicus* brief is the only pleading that the FDIC filed in the Court of Appeals for the Federal Circuit. (Civil No. 17-683, Docket No. 22.)[9]

---

[9] The Almeidas argued that the FDIC lacked standing to seek a preliminary injunction. (Docket No. 27 at p. 2.) The Court is cognizant that the proponent of a preliminary injunction must establish that it has standing. Cf. Almond v. Capital Prop., 212 F.3d 20, 22 (1st Cir. 2000) (noting that the defendant's "most salient claims are that the state lacks standing to seek a preliminary injunction, [and] that the injunction was improvidently granted"). The Court need not address standing, however, because the FDIC failed to satisfy the irreparable harm threshold prong of the preliminary injunction analysis.

The record negates the FDIC's irreparable harm argument. Tellingly, the FDIC fails to address the eighteen-month delay in its motion for a preliminary injunction. (Docket No. 12.) During this delay, the FDIC did not file a single motion in the Court of Federal Claims action, a litigation to which it is not a party. At the preliminary injunction hearing, the FDIC attributed the eighteen-month delay to an "unfortunate . . . miscommunication."[10] The FDIC avers that "the people that needed to be aware were not aware until very recently." This explanation is patently insufficient. See Markowitz Jewelry Co. v. Chapal/Zenray, Inc., 988 F. Supp. 404, 407 (S.D.N.Y. 1997) (holding that the party seeking injunctive relief "bore the burden of coming forward with evidence to excuse its delay," and failed to do so because its "vague suggestions [were] insufficient to explain the [thirteen-month] delay"). The eighteen-month delay between the Court of

---

[10] Court reporters are responsible for promptly filing, when requested, certified transcripts of all proceedings before the Court. 28 U.S.C. § 753. Transcripts are available to parties for a fee. The Court may access preliminary drafts of the transcripts before the official transcript is published. This Opinion and Order cites to a preliminary draft of the transcript.

Federal Claims action and the FDIC's motion for a preliminary injunction evinces a lack of urgency.[11]

The FDIC claims that it "will suffer irreparable harm absent an injunction because having to litigate in a forum other than [the jurisdiction] selected in the Agreement deprives the FDIC-R of the benefit of its bargained-for forum selection clause." (Docket No. 12 at p. 15.)  Neither the FDIC nor the United States moved for intervention in the Court of Federal Claims action claiming an interest in the Kennedy Avenue property.[12]  The United States, the Almeidas, and the Court of Federal Claims litigated and disposed of the Tucker Act claims without an appearance from

---

[11] The FDIC cites precedent from the First Circuit Court of Appeals for the proposition that injunctive relief is appropriate despite an eighteen-month delay.  (Draft Transcript, p. 4) (citing Claudio de León v. Sistema Universaritario Ana F. Méndez, 775 F.3d 41 (1st Cir. 2014); Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385 (1st Cir. 2001)).  Both cases addressed the enforceability of mandatory forum selection clauses in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Id.  In Claudio de León, the First Circuit Court of Appeals held that a "motion to dismiss based on a forum-selection clause may be raised at any time in the proceedings before disposition on the merits." 775 F.3d at 49; see Silva, 239 F.3d at 388 (holding that the movant timely filed "its motion to dismiss before the completion of discovery").  Neither decision addressed delay in seeking a preliminary injunction.  Id.  Accordingly, Claudio de León and Silva are inapposite.  Id.

[12] Rule 24 of the United States Court of Federal Claims provides that parties may intervene as a matter of right by:

> [claiming] an interest relating to the property or transaction that is subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

R. Fed. Cl. 24(1)(2).

the FIDC.  Tenerife Real Estate Holdings, LLC, 126 Fed. Cl. 156. The Court is cognizant that the "preliminary injunction standard weighs the potential for harm to the [FDIC] if the injunction is denied, not the potential for irreparable harm to the [FDIC] if the injunction is granted."  Esso Std. Oil, 445 F.3d at 19.  At this juncture, the FDIC is not a party to the Court of Federal Claims action and has filed one motion on appeal.  Accordingly, the FDIC's assertion regarding its need to litigate in the Court of Federal Claims action is suspect.

**IV. CONCLUSION**

For the reasons discussed above, the Court **DENIES** the FDIC's motion for a preliminary injunction.  (Docket No. 12.)

The parties will inform the Court, **no later than February 25, 2019**, if this case may be dismissed.  The FDIC's prayers for relief have been essentially resolved by this Opinion and Order.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 19, 2019.

                                         s/ Francisco A. Besosa
                                         FRANCISCO A. BESOSA
                                         UNITED STATES DISTRICT JUDGE